IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHELLE DOE,<br><br>                    Plaintiff,<br><br>    v.<br><br>PARX CASINO, et al.,<br><br>                    Defendants. | CIVIL ACTION<br>NO. 18-5289 |

## OPINION

**Slomsky, J.**                                                           **April 11, 2019**

## I.    INTRODUCTION

Plaintiff Michelle Doe,[1] an African-American female who identifies as a lesbian, brings this employment discrimination suit against her former employers, Parx Casino, Greenwood Gaming and Entertainment, Inc., and Greenwood Table Games Services, Inc. ("Defendants"),[2] pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq.  In Count I of the Complaint, Plaintiff alleges that Defendants subjected her to a hostile workplace environment based on her sexual orientation in violation of Title VII.  In Count II, Plaintiff alleges that Defendants wrongfully terminated her based on her sexual orientation, also in violation of Title VII.  (Doc. No. 1.)

---

[1]    On January 2, 2019, the Court granted Plaintiff leave to proceed anonymously in this case.  (See Doc. No. 4.)

[2]    Plaintiff claims that she was employed by Defendant Parx Casino as a Table Games Dealer. She also claims that she was employed by Defendants Greenwood Gaming and Entertainment, Inc., and Greenwood Table Games Services, Inc.  All three Defendants are located in Bensalem, Pennsylvania, but from the Complaint, it is unclear how the three companies are connected. (See Doc. No. 1.)

On February 22, 2019, Defendants filed a Motion to Dismiss for Failure to State a Claim. (Doc. No. 6.) On March 8, 2019, Plaintiff filed a Response in Opposition to Defendants' Motion. (Doc. No. 7.) Then, on March 15, 2019, Defendants filed a Reply in Support of the Motion to Dismiss. (Doc. No. 8.) The Motion is now ripe for disposition. For reasons stated infra, the Court will grant Defendants' Motion to Dismiss, but will dismiss the Complaint without prejudice.

## II.    BACKGROUND

Plaintiff Michelle Doe is an African-American female "who identifies as a lesbian and has a masculine gender expression." (Doc. No. 1 ¶ 14.) In December 2017, she was hired as a Table Games Dealer at Defendant Parx Casino ("Parx Casino"), which is located in Bensalem, Pennsylvania. (Id. ¶ 13.) Plaintiff alleges that she was objectively qualified for this position because (1) she had previous work experience as a Table Games Dealer, (2) she went to Dealer Training Academy at Bucks County Community College, and (3) she attended Casino Dealer School to learn Baccarat. (Id. ¶ 22.)

From the moment she started working at Parx Casino, Plaintiff claims that she was subjected to harassment on the basis of her sexual orientation. For example, soon after she was hired, a security guard at Parx Casino mis-gendered her by calling her "sir." (Id. ¶ 16.) Further, Plaintiff alleges that from early 2018 through March 2018, a male Table Games Dealer at Parx Casino repeatedly picked on her. She claims that he acted aggressively towards her, often refused to move out of her way, and once jumped in her face. (Id.) Further, Plaintiff complains that a female co-worker said "Ooh, baby" to her at work. (Id.) In April 2018, a male cook in the Parx Casino Employee Dining Room, said "Yes, sir, I mean ma'am" to her in "a derogatory manner," despite knowing Plaintiff and being familiar with her sexual orientation and gender expression. (Id.) The Complaint also contains allegations that Parx Casino employees ostracized Plaintiff— that is, Plaintiff claims that employees refused to sit with her in the break rooms, refused to

acknowledge her on the casino floor, and "acted as if they did not wish to be associated with [her]." (Id.)

As early as March 2018, Plaintiff recalls discussing the alleged harassment with her superiors, including two individuals in Human Resources, and her manager, Steve Smith. (Id.) During a pre-shift meeting in May 2018, Plaintiff attempted to address her co-workers' issues or confusion about her sexual orientation and to "potentially resolve the issues of anti-gay or lesbian harassment by her co-employees." (Id.) At the meeting, Plaintiff stood up, introduced herself as Michelle, but asked co-workers to call her "Shell." (Id.) Further, she told her co-workers that she had some "run-ins" with employees about her sexual orientation, and "if anybody had questions they should feel free [to] speak to [her]." (Id.) At that point, Julia Hall, the Pit Boss, told Plaintiff to stop interrupting the meeting and asked her to sit down. Plaintiff alleges that at a pre-shift meeting a few months earlier, a male employee was permitted to express his opinions and issues without any rebuke from superiors. (Id.)

Despite her attempts to address the alleged anti-gay sentiments of her co-workers, Plaintiff claims that the harassment continued. In June 2018, a female Table Games Dealer at Parx Casino said something to Plaintiff, but Plaintiff ignored it. To that, the female Dealer asked "What, is this bitch deaf?" Then, the Dealer told Plaintiff that she was "dirty" and had a "bald head." (Id.) Prior to this interaction, Plaintiff had overheard this particular female Dealer commenting about another female co-worker's sexuality in a disparaging manner. (Id.) Plaintiff alleges that the female Dealer, who is heterosexual, was never reprimanded or disciplined for her actions. (Id. ¶ 41.)

On August 11, 2018, a male patron came into Parx Casino and "threatened or intimidated the Plaintiff by getting in Plaintiff's face and making a fist." (Id.) Later that day, Plaintiff reported the incident to the Pit Boss. (Id.) On August 12, 2018, Steve Smith, Plaintiff's manager, informed

her that she was "under investigative suspension" and suspended her. On August 13, 2018, Parx Casino terminated Plaintiff's employment. (Id.) Defendants told Plaintiff that the decision to fire her was based on the August 11, 2018 "negative interaction" with the male customer. (Id. ¶ 42.)

Plaintiff initiated this litigation by filing the Complaint on December 7, 2018. (Doc. No. 1.) In Count I, she claims that she "was subjected to a hostile environment/harassment because she is a lesbian." (Id. ¶ 15.) In Count II, she alleges that her employment at Parx Casino was terminated because she is a lesbian. (Id. ¶ 24.) Specifically, she claims that "Defendants used a negative interaction with a customer as a pretext to terminate Plaintiff's employment, and the real reason for Plaintiff's employment was Plaintiff's sexual orientation (lesbian), and/or others' negative reactions to Plaintiff being openly lesbian." (Id. ¶ 42.) Moreover, she asserts that "[a] motivating factor in Plaintiff's discharge was the fact that Plaintiff's co-employees, and/or a third-party/customer, reacted poorly to Plaintiff being openly lesbian." (Id. ¶ 44.)

## III. STANDARD OF REVIEW

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in Ashcroft v. Iqbal, 556 U.S. 662 (2009). After Iqbal, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 678; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Tatis v. Allied Interstate, LLC, 882 F.3d 422, 426 (3d Cir. 2018) (quoting Iqbal, 556 U.S. at 678). Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Iqbal, 556 U.S. at 678). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Iqbal, 556 U.S. at 678).

Applying the principles of Iqbal and Twombly, the Third Circuit in Santiago v. Warminster Township, 629 F.3d 121 (3d Cir. 2010), set forth a three-part analysis that a district court in this Circuit must conduct in evaluating whether allegations in a complaint survive a Rule 12(b)(6) motion to dismiss:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Id. at 130 (quoting Iqbal, 556 U.S. at 675, 679). The inquiry is normally broken into three parts: "(1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011).

A complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (alteration in original) (citation omitted). The "plausibility" determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

## IV. ANALYSIS

Defendants advance a single argument in support of their Motion to Dismiss the Complaint: they claim that Plaintiff has failed to state a claim upon which relief can be granted because the Third Circuit Court of Appeals has repeatedly found that sexual orientation is not an actionable

basis for employment discrimination under Title VII. (Doc. No. 6 at 4-5.) In opposition to Defendants' Motion, Plaintiff makes two contentions: (1) that this claim should survive because a claim of discrimination based on sexual orientation is necessarily a gender stereotyping claim, which is actionable under Title VII; and (2) that even if the sexual orientation claim is not actionable, Plaintiff has pled a viable, stand-alone claim of gender stereotyping. (Doc. No. 7 at 3.) The Court will first discuss whether the Third Circuit prohibits an employer from discriminating on the basis of sexual orientation under Title VII. Then, the Court will turn to Plaintiff's argument that the Third Circuit should recognize that a sexual orientation claim should be considered a gender stereotyping claim. Finally, the Court will address whether Plaintiff has sufficiently pled a stand-alone claim of gender stereotyping.

## A. The Third Circuit Court of Appeals Does Not Prohibit Employment Discrimination Based on Sexual Orientation

As set forth above, Plaintiff brings a hostile work environment claim and a wrongful termination claim against Defendants. In both claims, she alleges that she suffered discrimination because she is a lesbian. (Doc. No. 1.) Defendants neither address nor deny the substance of these allegations; rather, Defendants urge the Court to dismiss the Complaint because the Third Circuit Court of Appeals has held that employment discrimination based on sexual orientation is not actionable under Title VII. (Doc. No. 6.)

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq., provides that "[i]t shall be an unlawful employment practice . . . to discriminate against any individual . . . because of . . . sex." 42 U.S.C. § 2000(e)-2(a)(1). The United States Supreme Court has explained that Title VII "is not limited to 'economic' or 'tangible' discrimination." Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986). It also bars "a discriminatorily hostile or abusive [work] environment." In re: Tribune Media Company, 902 F.3d 384, 399 (3d Cir. 2018) (quoting Harris

6

v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).  A successful hostile work environment claim requires a plaintiff to "establish that 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of respondeat superior liability."  Moody v. Atlantic City Board of Education, 870 F.3d 206, 213 (3d Cir. 2017) (quoting Mandel v. M & Q Packaging Corp., 706 F.3d 157, 167 (3d Cir. 2013)).

In the absence of direct evidence of discrimination, a wrongful termination claim under Title VII is analyzed under the burden-shifting framework articulated by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  To make out a prima facie case for wrongful termination under McDonnell Douglas, a plaintiff must show that (1) she is a member of a protected class, (2) she was discharged, (3) she was qualified for the job, and (4) she was replaced by someone outside of the protected class or that persons outside the protected class were treated more favorably in a manner that gives rise to an inference of discrimination.  Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000).

Defendants' objections to the Complaint focus solely on the first prong of these claims—that the alleged conduct was because of Plaintiff's sex or because she is a member of a protected class under Title VII.  (See Doc. No. 6.)   Defendants submit that the hostile work environment claim and the wrongful termination claim fail because Plaintiff has only alleged discrimination on the basis of sexual orientation, which, according to the Third Circuit, is neither a subset of "because of sex" discrimination nor a protected class for the purposes of Title VII.  (Id.)

 Defendants are correct that in the Third Circuit, employment discrimination claims based on sexual orientation are not actionable.  In Bibby v. Philadelphia Coca Cola Bottling Co., the

Third Circuit expressly held that "Title VII does not prohibit discrimination based on sexual orientation. Congress has repeatedly rejected legislation that would have extended Title VII to cover sexual orientation." 260 F.3d 257, 261 (3d Cir. 2001).

The Court acknowledges that much has changed since Bibby. In the years since that opinion was issued by the Third Circuit, the United States Supreme Court has recognized that same-sex couples have the constitutional right to marry. Obergefell v. Hodges, 135 S.Ct. 2584, 2602 (2015) ("If rights were defined by who exercised them in the past, then received practices could serve as their own continued justification and new groups could not invoke rights once denied. This Court has rejected that approach, both with respect the right to marry and the rights of gays and lesbians."). Then, in an opinion issued April 4, 2017, the Seventh Circuit Court of Appeals determined that discrimination on the basis of sexual orientation is a form of sex discrimination.[3] Hively v. Ivy Tech Cmty. Coll. Of Ind., 853 F.3d 339, 351-52 (7th Cir. 2017) ("[A] person who alleges that she experienced employment discrimination on the basis of her sexual orientation has put forth a case of sex discrimination for Title VII purposes.") More recently, in Zarda v. Altitude Express, Inc., the Second Circuit Court of Appeals, sitting en banc, held that "sexual orientation discrimination, is motivated, at least in part, by sex and is thus a subset of sex discrimination." 883 F.3d 100, 112 (2d Cir. 2018) (en banc).

What has not changed is the law handed down by the Third Circuit, which this Court is bound to follow. Since Bibby, courts in this district have uniformly held that harassment or

---

[3] Conversely, in Evans v. Georgia Regional Hospital, the Eleventh Circuit Court of Appeals held that discharge based on sexual orientation is not prohibited by Title VII. 850 F.3d 1248, 1255 (11th Cir. 2017).

discrimination based on sexual orientation is not actionable under Title VII.[4] See, e.g., Prowel v. Wise Business Forms Inc., 579 F.3d 285, 289 (3d Cir. 2009); Ellingsworth v. Hartford Fire Ins. Co., 247 F. Supp. 3d 546, 552 (E.D. Pa. 2017).  Indeed, on January 24, 2019, the Eastern District of Pennsylvania reiterated that a plaintiff cannot establish a hostile work environment claim under Title VII based solely on sexual orientation discrimination.  Guess v. Philadelphia Housing Authority, 352 F. Supp. 3d 596, 603 (E.D. Pa. 2017).  And as recently as March 7, 2019, a court in this district again held that under Bibby, employment discrimination based on sexual orientation is not actionable: "[B]ecause of binding precedent, the Court must reject any assertion that alleged discrimination based on sexual orientation alone is actionable. Discrimination based on sexual orientation is offensive, but case law in this circuit is clear."  Moyer v. Aramark, No. 18-2267, 2019 WL 1098951, at *4 (E.D. Pa. Mar. 7, 2019).

**B. The Court Will Dismiss the Sexual Orientation Claim Because It Is Not Empowered to Deviate From the Third Circuit's Holding in Bibby**

Notwithstanding the Third Circuit's holding in Bibby, Plaintiff argues that a claim of discrimination based on sexual orientation is actionable under Title VII because "all sexual orientation discrimination is a form of gender stereotyping prohibited by Title VII."  (Doc. No. 7 at 5.)

As explained above, Title VII prohibits an employer from discriminating against an employee because of his or her sex.  Over the years, the United States Supreme Court has expanded the definition of "because of sex" discrimination in increments.  In Newport News Shipbuilding

---

[4]    The Third Circuit has never overruled Bibby.  Nor has a single court in the Eastern District of Pennsylvania ever deviated from its holding.  Within the entire Third Circuit, only one court, in the Western District of Pennsylvania, has ever concluded that discrimination based on sexual orientation is actionable under Title VII.  See U.S. Equal Employment Opportunity Commission v. Scott Medical Health Center, P.C., 217 F. Supp. 3d 834 (W.D. Pa. 2016).  The Court will discuss Scott Medical Health infra.

and Dry Dock Co. v. EEOC, the Court explained that "[m]ale as well as female employees are protected against discrimination." 462 U.S. 669, 682 (1983). Three years later, in Meritor Savings Bank, the Court found that Title VII does not limit discrimination based on sex to "tangible" or "economic" discrimination, therefore creating the basis for a hostile work environment claim. 477 U.S. at 54.

Then, in one of the most significant developments in this area of the law, the Court in Oncale v. Sundowner Offshore Services concluded that "because of sex" discrimination includes sexual harassment in the workplace between members of the same sex. 523 U.S. 75, 79 (1998). There, the plaintiff alleged that his male co-workers repeatedly subjected him to sexually-charged harassment and threats, but the district court and the Fifth Circuit Court of Appeals threw out his claim, holding that a male plaintiff has no cause of action under Title VII for harassment by male co-workers. Id. at 77. The Supreme Court reversed that decision because, regardless of the sex of the harassers, the plaintiff alleged discrimination on the basis of sex:

> We see no justification in the statutory language or our precedents for a categorical rule excluding same-sex harassment claims from the coverage of Title VII. As some courts have observed, male-on-male sexual harassment in the workplace was assuredly not the principle evil Congress was concerned with when it enacted Title VII. But statutory prohibitions often go beyond the principal evil to cover reasonably comparable evils, and it is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed. Title VII prohibits "discriminat[ion] . . . because of . . . sex" in the "terms" or "conditions" of employment. Our holding that this includes sexual harassment must extend to sexual harassment of any kind that meets the statutory requirements.

Id. at 79-80. Ultimately, the Court explained that the critical inquiry in a "because of sex" claim is whether members of one sex are exposed to disadvantageous terms and conditions of employment to which members of the opposite sex are not. Id. at 81 (quoting Harris v. Forklift Systems, Inc., 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)). In recent years, lower courts have relied on the Court's comment that "statutory prohibitions often go beyond the principal evil

to cover reasonably comparable evils," to further expand the definition of "because of sex" discrimination. See, e.g., Hively, 853 F.3d at 344-45 (holding that a person who alleges that she has experienced employment discrimination on the basis of sexual orientation has brought an actionable claim under Title VII).

Particularly relevant to the case at hand, in Price Waterhouse v. Hopkins, the Supreme Court first recognized that a "because of sex" discrimination claim can include what is now known as a gender stereotyping claim—that is, a claim that an employee was discriminated against because he or she failed to conform to traditionally held gender stereotypes. 490 U.S. 228, 264 (1989). There, Ann Hopkins, a heterosexual woman, alleged that her employer, Price Waterhouse, told her that in order to be promoted, she needed to "walk more femininely, talk more femininely, dress more femininely, wear make-up, have [her] hair styled, and wear jewelry." Id. at 234. Essentially, Price Waterhouse told her that if she wanted to succeed in the workplace, she needed to stop acting so "macho" and "aggressive," and learn to conform to traditionally held expectations of how a woman should behave. Id. at 235. The Supreme Court held that Price Waterhouse's conduct was impermissible, and explained the following:

> We are beyond the day when an employer could evaluate employees by assuming or insisting that [employees] matched the stereotype associated with their group, for "'[i]n forbidding employers to discriminate against individuals because of their sex, Congress intended to strike at the entire spectrum of disparate treatment of men and women resulting from sex stereotypes.'"

Id. at 251 (citing Los Angeles Dept. of Water and Power v. Manhart, 435 U.S. 702, 707 n.13 (1978)). Thus, in a case where the plaintiff's sexual orientation was not at issue, the Supreme Court held that Title VII prohibits discrimination and harassment against an employee who failed to conform to subjective gender stereotypes traditionally associated with his or her sex.

In the years since Price Waterhouse was decided, the Third Circuit has analyzed gender stereotyping claims where the plaintiff's sexual orientation was at issue. In Bibby, the plaintiff, a

gay man, claimed that his male co-workers harassed him because of his sexual orientation. 260 F.3d at 259-60. The district court granted summary judgment in favor of the employer, finding that, unlike in <u>Oncale</u>, the evidence did not show that plaintiff was harassed because of his sex; it only showed that he was harassed because of his sexual orientation. <u>Id.</u> at 260-61. On appeal, the Third Circuit affirmed the district court's decision, and applying both <u>Oncale</u> and <u>Price Waterhouse</u>, explained the evidentiary means by which a plaintiff could prove same-sex harassment in the workplace:

> Thus, there are at least three ways by which a plaintiff alleging same-sex sexual harassment might demonstrate that the harassment amounted to discrimination because of sex—the harasser was motivated by sexual desire, the harasser was expressing a general hostility to the presence of one sex in the workplace, or the harasser was acting to punish the victim's noncompliance with gender stereotypes. Based on the facts of a particular case and the creativity of the parties, other ways in which to prove that harassment occurred because of sex may be available.

<u>Id.</u> at 264. That being said, the Third Circuit held that the plaintiff in <u>Bibby</u> could not survive summary judgment because he only identified evidence that he was harassed because of his sexual orientation, and not his sex:

> [I]ndeed, he did not even argue that he was being harassed because he was a man and offered nothing that would support such a conclusion. There was no allegation that his alleged harassers were motivated by sexual desire, or that they possessed any hostility to the presence of men in the workplace or in Bibby's particular job. Moreover, he did not claim that he was harassed because he failed to comply with societal stereotypes of how men ought to appear or behave or that as a man he was treated differently than female co-workers. His claim was, pure and simple, that he was discriminated against because of his sexual orientation. No reasonable finder of fact could reach the conclusion that he was discriminated against because he was a man.

<u>Id.</u> In sum, <u>Bibby</u> clearly and unambiguously held that a claim of discrimination based on sexual orientation is not actionable under Title VII. Although the court recognized that "[h]arassment on the basis of sexual orientation has no place in our society," it ultimately prohibited such claims

involving sexual orientation because "Congress has not yet seen fit . . . to provide protection against such harassment." Id. at 265.

Since Bibby, the Third Circuit has attempted to draw a clear line between sexual orientation claims and gender stereotyping claims. In Prowel v. Wise Business Forms, Inc., a gay employee was continuously harassed and ultimately terminated from his employment at a factory. 579 F.3d 285, 287-89 (3d Cir. 2009). He sued, and on summary judgment, the record revealed that some of the harassment targeted behaviors perceived as effeminate, but some of the harassment targeted his homosexuality. Id. at 289. Despite the presence of the gender stereotyping, the district court ruled in favor of the employer, holding that the suit "was merely a claim for sexual orientation discrimination . . . repackaged as a gender stereotyping claim in an attempt to avoid summary judgment." Id. On appeal, the Third Circuit vacated the district court's decision. Although the court recognized that "it is possible that the harassment [plaintiff] allege[d] was because of sexual orientation, not his effeminacy," the court ultimately concluded that "this does not vitiate the possibility that [plaintiff] was also harassed to conform to gender stereotypes." Id. Thus, the court held that even where a plaintiff alleged harassment based on sexual orientation, he could survive dismissal or summary judgment so long as he demonstrated that some of the harassment targeted non-conformity with gender stereotypes. Id. at 290-91.

The Third Circuit has cautioned that the line between a gender stereotyping claim and a sexual orientation claim is "difficult to draw," particularly when "some of the complained conduct arguably fits within both rubrics." Kay v. Independence Blue Cross, 142 Fed. App'x 48, 51 (3d Cir. 2005) (Rendell, J., concurring). However, in certain cases, the line between these two types of claims does not seem merely difficult to draw; it seems arbitrary. Compare the following two cases. In Coleman v. Caritas, a homosexual employee was called gay slurs at work, was told by

co-workers that he looked gay, and was physically assaulted in the workplace because of his sexuality.  No. 16-3652, 2017 WL 2423794, at *1-2 (E.D. Pa. June 2, 2017).  He sued his employer, claiming that he was impermissibly discriminated against because of his sexual orientation.  Id. Similar to this case, the employee framed his case as a sexual orientation claim and not a gender stereotyping claim.  As a result, the court was compelled to dismiss it.  Id. at *4-5.  In Barrett v. Union Railroad Company, the plaintiff alleged substantially similar conduct—that he was called homophobic slurs and threatened because he was perceived as gay.  No. 17-101, 2017 WL 2731284, at *4 (W.D. Pa. June 26, 2017).  There, however, the plaintiff labeled the discrimination as gender stereotyping, and as a result, the claim survived.  Id. at *5.  The stark contrast between these outcomes leads a court to contemplate whether the difference between a gender stereotyping claim and a sexual orientation claim is nothing more than artifice.

In her briefings, Plaintiff directs the Court to two cases that address this issue head on. First, in Guess, a heterosexual employee sued his former employer for subjecting him to a hostile work environment based on the perception that he was gay.[5]  354 F. Supp. 3d at 603.  There, the plaintiff framed the discrimination as a sexual orientation claim, and as a result, the district court stated that Bibby compelled dismissal.  Notwithstanding this outcome, the court wrote that the time has come for the Third Circuit to reevaluate Bibby:

> [F]acts involving discrimination based on sexual orientation, perceived or otherwise, quite often support claims of gender stereotyping discrimination.  This leads me to the question whether there is any meaningful difference between sexual orientation discrimination and gender stereotyping discrimination.  Any assumption about another person's sexuality, correct or not, necessarily seems to rely on assumptions or stereotypes about how members of that person's gender typically conduct themselves.  See Ellingsworth, 247 F. Supp. 3d at 554; Brian Soucek,

---

[5]  Plaintiff's attorney, Justin Robinette, Esquire, also represents the plaintiff in Guess v. Philadelphia Housing Authority, 354 F. Supp. 3d 596 (E.D. Pa. 2019).  (See Doc. No. 6 at 8 n.3.)

> Perceived Homosexuals: Looking Gay Enough for Title VII, 63 Am. U. L. Rev.
> 715, 766 (2014) ("Beliefs about homosexuality themselves often, if not always, turn
> on gender stereotypes."). Some may protest that sexual orientation discrimination
> centers on assumptions about people of a particular sexual orientation, rather than
> members of one gender. See Hively v. Ivy Tech Cmty. Coll., 853 F.3d 339, 370
> (7th Cir. 2017) (Sykes, J., dissenting). But the stereotypes generally associated with
> being gay differ along gender lines. See Soucek, supra, at 717 (referring to the
> homosexual stereotypes of being "flamboyant (if male) or butch (if female)"); see
> also Baldwin v. Foxx, EEOC Appeal No. 0120133080, 2015 WL 4397641, at *5
> (EEOC July 15, 2015) (discussing the use of "lesbian" to refer to homosexual
> women and "gay" to refer to homosexual men). The inverse stereotypes associated
> with being heterosexual differ along the same lines—mirroring the gender
> stereotypes of "masculine" men and "feminine" women. Thus, gender stereotypes
> appear to lie at the heart of sexual orientation discrimination cases.

Id. at 604-05. Despite this discussion, the court in Guess dismissed the sexual orientation claim because it concluded that it was not empowered to overrule Bibby. Still, the court emphasized that in light of society's increasingly evolving understanding of human sexuality, perhaps the time had come for the Third Circuit to reevaluate the foundation upon which Bibby rests.[6]

While Plaintiff agrees with Guess's analysis that there is little, if any, meaningful difference between a gender stereotyping claim and a sexual orientation claim, she contends that the court in Guess was incorrect in its assumption that permitting the sexual orientation claim to survive required overruling Bibby. (Doc. No. 7.) In support of this contention, Plaintiff urges the Court to adopt the reasoning of U.S. Equal Employment Opportunity Commission v. Scott Medical Health Center, P.C., 217 F. Supp. 3d 834 (W.D. Pa. 2016), wherein a court in the Western District

---

[6] In Guess, the court dismissed the complaint without prejudice. Soon thereafter, the plaintiff filed a Motion for Leave to File an Interlocutory Appeal pursuant to 28 U.S.C. § 1292(b). See Guess v. Philadelphia Housing Authority, Civ. No. 18-2948, Doc. No. 23 (E.D. Pa., filed July 13, 2018). On March 5, 2019, the court granted plaintiff's motion because "there is currently a substantial ground for difference of opinion" on the following question of law: "[w]hether Title VII of the Civil Rights Act of 1964's prohibition on discrimination 'because of . . . sex' includes discrimination based on perceived sexual orientation?" Guess v. Philadelphia Housing Authority, Civ. No. 18-2948, Doc. No. 28 (E.D. Pa., filed July 13, 2018).

of Pennsylvania allowed a plaintiff to proceed on a sexual orientation claim despite the prohibition espoused in Bibby.

In Scott Medical Health, the United States Equal Employment Opportunity Commission ("EEOC") sued an employer on behalf of a gay male employee, alleging that the employee was subjected to a hostile work environment based on his sexual orientation. Id. at 835. There, the court departed from every other district court in this Circuit and held that Title VII's "because of sex" provision prohibits discrimination on the basis of sexual orientation:

> There is no more obvious form of sex stereotyping than making a determination that a person should conform to heterosexuality. As the EEOC states, "[d]iscriminating against a person because of the sex of that person's romantic partner necessarily involves stereotypes about 'proper' roles in sexual relationships—that men are and should only be sexually attracted to women, not men." (Doc. 16) at 11-12. This discriminatory evil is more than reasonably comparable to the evil identified by the Supreme Court in Price Waterhouse. Indeed, the Court finds discrimination on the basis of sexual orientation is, at its very core, sex stereotyping plain and simple; there is no line separating the two.

Id. at 841.

Significantly, the court in Scott Medical Health stated that the Third Circuit's holding in Bibby was not controlling because "the Court of Appeals in Bibby was not presented with the same arguments or analytical framework as that put forth by the EEOC in this case." Id. Further, the court noted that it was not bound by Bibby because "significant intervening legal developments . . . call into question how the [Third Circuit] evaluated Title VII in Bibby." Id. at 842. For one, the court pointed to the fact that Bibby heavily relied on Congress's failure to prohibit employment discrimination based on sexual orientation, but that, in later cases, the Third Circuit has questioned the value of relying on Congressional inaction. Id. Further, the court stated that much of the authority relied upon in Bibby predated Price Waterhouse and "accept[ed] as a given that Title VII did not cover sexual orientation discrimination." Id.

Turning to the case at hand, the Court agrees with Guess and Scott Medical Health that the question of whether discrimination based on sexual orientation is actually gender stereotyping warrants serious consideration. At the heart of a sexual orientation claim is the concept that a homosexual man or woman is discriminated against or harassed for failing to conform to the traditional notion of whom they should love. That is, a gay man is harassed for failing to conform to the societal expectation that his romantic partner should be a woman; and a lesbian woman is harassed for failing to conform to the societal expectation that her romantic partner should be a man.

Both the Supreme Court and the Third Circuit have stated that a plaintiff can state a claim under Title VII if she establishes that she endured disparate treatment or harassment because she failed to conform to subjectively held stereotypes associated with her sex. See Price Waterhouse, 490 U.S. at 250; see also Prowel, 579 F.3d at 285. For example, as in Price Waterhouse, a woman states an actionable claim where her male co-workers are permitted to be "macho" and "aggressive," but she is not, because she is a woman. Following this logic, should not a gay man have an actionable claim if his female co-workers are permitted to date men, but he is not, simply because he is a man? Should not a lesbian woman have an actionable claim if her male co-workers are permitted to date women, but she is not, simply because she is a woman? After all, as articulated by Justice Ginsburg in Harris v. Forklift Systems, Inc., "[t]he critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Harris, 510 U.S. at 25 (Ginsburg, J., concurring).

These questions are worthy of serious consideration. But, at this point, to answer them and change the law would be to circumvent the authority of the Third Circuit Court of Appeals and

deviate from the hierarchy of judicial power in the federal system. "Under the allocation of authority established by the three-tier system of federal courts, this Court is obliged to follow Third Circuit precedent unless that precedent has been overruled by the court of appeals sitting in banc or by an opinion of the Supreme Court that overrules that precedent." Loftus v. Southeastern Pennsylvania Transp. Authority, 843 F. Supp. 981, 984 (E.D. Pa. 1994) (quoting Casey v. Planned Parenthood, 14 F.3d 848, 856 (3d Cir. 1994)) (internal quotation marks and citations omitted). Here, contrary to the reasoning in Scott Medical Health, the Third Circuit in Bibby clearly and unambiguously held that discrimination based on sexual orientation is not actionable under Title VII. As emphasized in Guess, the legal developments cited by Scott Medical Health are not enough to invalidate Bibby and empower the Court to deviate from its holding.

Accordingly, because the Third Circuit, sitting en banc, has not overruled Bibby, and the Supreme Court has not addressed whether an employment discrimination claim based on sexual orientation is actionable under Title VII, the Court is compelled to dismiss Plaintiff's sexual orientation claim. However, like the courts in Guess and Coleman, the Court does so "with the recognition that the nature of injustice is that we may not always see it in our own times." Guess, 354 F. Supp. 3d at 607 (quoting Coleman, 2017 WL 2423794, at *5) (internal quotation marks omitted).

### C.  Plaintiff Has Not Successfully Pled a Gender Stereotyping Claim

Finally, Plaintiff opposes dismissal on the grounds that she has adequately set forth a stand-alone claim for gender stereotyping, which is actionable under Third Circuit precedent. (Doc. No. 7.) On a gender stereotyping claim, "[a]ll [a] plaintiff need[s] to allege to survive a motion to dismiss is a 'refusal to conform to a gender stereotype' and an allegation that this led to discrimination." Guess, 352 F. Supp. 3d at 602. As noted above, in Guess, the plaintiff sued his

former employer for subjecting him to a hostile work environment based he was perceived as gay. Id. at 599, 600. In response to his employer's motion to dismiss, the plaintiff asserted for the first time that the allegations in the complaint also stated a gender stereotyping claim. Id. at 602. The court disagreed, and ultimately dismissed the complaint without prejudice, reasoning as follows:

> As to the adequacy of the present Amended Complaint, Plaintiff's only arguments in support of a gender stereotyping claim appear in his Response. There, he contends in a footnote that Count I could be relabeled "Sex Discrimination" and supported by the same facts. Pl.'s Resp. 18 n. 1, ECF No. 17. But it is well settled that a plaintiff may not amend a complaint through a response to a motion to dismiss. Commonwealth ex. rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (citations omitted) ("[T]he complaint may not be amended by the briefs in opposition to a motion to dismiss.") Plaintiff further argues that he has pled a gender stereotyping claim but does not articulate with any clarity how, pointing only to one paragraph that implies his supervisor's actions were motivated by him "acting a certain way." Pl.'s Resp. 21, ECF No. 17; Pl.'s First Am. Compl. 6, ¶ 11(n), ECF No. 14 (quoting supervisor's text message in which she wrote, "I slipped and said you were acting a certain way" in reference to the f---ing f----- incident). Plaintiff has framed his hostile work environment claim exclusively as discrimination on the basis of perceived sexual orientation. As discussed above, such a claim is not currently recognized within the Third Circuit. Therefore, I must grant the Motion to Dismiss Count I, although I do so without prejudice to Plaintiff's right to again amend the complaint.

Id. at 603.

Likewise, in this case, Plaintiff raised gender stereotyping for the first time in the Response in Opposition to Defendants' Motion to Dismiss. There, she contends that she has "sufficiently alleged that she was subjected to gender stereotyping based on the facts presented in the Complaint." (Doc. No. 7 at 23.) In support of this contention, she points to allegations that she was occasionally called "sir" by co-workers and that she has a "masculine gender expression." (Id. at 23-24.)

While it is accurate that Plaintiff did in fact make those allegations in the Complaint, like the plaintiff in Guess, she clearly and distinctly frames her hostile work environment claim and wrongful termination claim as discrimination on the basis of sexual orientation. Count I is clearly

and unambiguously labeled: "Hostile Work Environment Based on Sexual Orientation (Lesbian) in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq." (Doc. No. 1 at 6.) Similarly, Count II is labeled: "Wrongful Discharge/Termination Based on Sexual Orientation (Lesbian) in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq." (Id. at 10.) Further, throughout the body of the Complaint, Plaintiff repeatedly states that she "was subjected to a hostile environment/harassment because she is a lesbian," (id. ¶ 15), and that she "was terminated from employment by Defendants because Plaintiff is openly lesbian." (Id. ¶ 24.) Moreover, the last three paragraphs of the Complaint read as follows:

> 42. Defendants used a negative interaction with a customer as a pretext to terminate Plaintiff's employment, and the real reason for Plaintiff's termination was Plaintiff's sexual orientation (lesbian), and/or others' negative reactions to Plaintiff being openly lesbian.
>
> 43. Defendants acceded to or used employee and third-party/customer bias toward Plaintiff being openly lesbian as a reason to terminate Plaintiff's employment.
>
> 44. A motivating factor in Plaintiff's discharge was the fact that Plaintiff's co-employees, and/or a third-party/customer, reacted poorly to Plaintiff being openly lesbian.

(Id. ¶¶ 42-44.) As evidenced here, Plaintiff explicitly alleged that the discrimination she allegedly suffered was based on her sexual orientation, not on non-conformity with gender stereotypes. But at present, such a claim is not actionable in the Third Circuit. For this reason, the Court must dismiss the Complaint for failing to state a claim. But like the court in Guess, the Court will do so without prejudice to Plaintiff's right to amend the Complaint. Needless to say, any new complaint filed must plausibly allege impermissible gender stereotyping based on sex, or else it should not be filed.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion to Dismiss (Doc. No. 6) and dismiss the Complaint without prejudice. An appropriate Order follows.